## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

REAGAN MARKETING AND DESIGN, LLC,

               Plaintiff,

v

DENICE L. BRADLEY,

               Defendant.

_____/

Case No.

Honorable

**COMPLAINT**

Daniel J. Broxup (P72868)
Jennifer A. Puplava (P58949)
Mika Meyers PLC
*Attorneys for Plaintiff*
900 Monroe Avenue, NW
Grand Rapids, MI 49503
(616) 632-8000
dbroxup@mikameyers.com

_____/

Plaintiff Reagan Marketing and Design, LLC ("**RM+D**"), by and through its attorneys, Mika Meyers PLC, alleges as follows for its Complaint against Defendant:

### JURISDICTION AND VENUE

1.    RM+D is a Michigan limited liability company with its principal place of business in Kent County, Michigan.

2.    RM+D's sole member is domiciled in Kent County, Michigan.

3.    Defendant Denice L. Bradley ("**Bradley**") is a former employee of RM+D who is domiciled in Kent County, Michigan.

4.    The Court has jurisdiction under 11 U.S.C. § 1331 (federal-question) and 28 U.S.C. § 1338 (trademark infringement and cybersquatting) over Plaintiff's trademark-infringement and

cybersquatting claims under the Lanham Act, and the Court has supplemental jurisdiction under 11 U.S.C. § 1367 over the remaining claims as they are so related to the claims under the Lanham Act that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in Kent County, Michigan.

## GENERAL ALLEGATIONS

6. Since 1998, RM+D has been engaged in the business of providing clients with strategic marketing solutions and creative design services. RM+D's predecessor-in-interest, Reagan Marketing, was a sole proprietorship that was in operation from 1992 until the formation of RM+D in 1998.

7. RM+D's services include, among other things, the following: copywriting and editing; graphic design and illustration; web-design and programming; product design and packaging; and video production, animation, and editing.

8. At all relevant times, Bradley has held herself out as an experienced graphic designer.

9. In November 2022, RM+D hired Bradley as a full-time, at-will employee in the position of Senior Graphic Designer.

10. RM+D agreed to pay Bradley a base salary of $80,000 and to provide her with additional employment benefits, including paid time off, health and disability insurance, and retirement benefits.

11. RM+D supplied Bradley with an RM+D-owned laptop and other RM+D-owned equipment and software for use in her work on behalf of RM+D.

12. On or about November 29, 2022, RM+D provided Bradley with a copy of RM+D's Employee Handbook.

13. RM+D's Employee Handbook states in pertinent part as follows:

**5.4 Other Employment / Freelance**

Employees are not permitted to perform any services or have interest or involvement, either directly or indirectly, in any other business which resembles or competes with a product, process or service of Reagan Marketing + Design. If employees violate this rule they will be terminated. If you already have, or are considering an outside business involvement or employment, regardless of whether you think it would violate this rule, promptly advise the owner.

RM+D has contractual relationships with all clients; if you would like samples for your personal portfolio you will need written approval from the owner.

**5.5 Equipment Use**

Use of Reagan Marketing + Design's equipment for personal reasons is upon approval only and is expected to be done on breaks or after hours. Equipment is not to be used at any time for work for which you will be compensated for your own personal business gain.

\* \* \*

**5.6 Conflict of Interest**

Employees are required to avoid any outside activities that interfere with their work performance or objectivity. If this occurs, you will be asked to make a decision about priority of employment over other activities. If Reagan Marketing + Design is not satisfied with your proposed solution, you may be asked to leave employment at Reagan Marketing + Design. Each employee's signed and dated agreement is contained in his/her personnel file.

**5.7 Non-Compete**

Upon termination of employment, the employee will sever working relationships with all current and potential clients of Reagan Marketing + Design. As detailed in the Employee Severance & Non-Compete Agreement, it is also agreed that for a period of at least eighteen (18) months you will not solicit from current or potential clients of Reagan Marketing + Design any marketing business, communications business, design business or any business that would be in direct competition with Reagan Marketing + Design. Each employee's signed and dated agreement is contained in his/her personnel file.

**5.8 Internet, E-Mail, Telephone, Fax, Voice Mail and Social Media Policy**

3

a. **Purpose.** This policy has been developed to prevent impermissible use of RM+D equipment, to maintain quality and productivity control, to ensure compliance with policies and to provide a means to prevent and investigate illegal or other conduct adverse to RM+D, its employees, clients and vendors.

b. **Ownership of Computer Equipment, Software, Internet, E-mail, Telephone, Fax and Voice Mail Systems.** Internet - related systems (including, but not limited to, computer equipment, software and operating systems, network accounts providing electronic mail, worldwide web browsing, file transfer protocol, etc., networking and intra-net systems and software) and telephone systems, fax and voicemail are the property of RM+D. They are to be used for business purposes in serving the interest of RM+D and our clients. The passwords, codes and the contents contained on any of the Internet-related, telephone, fax and voicemail systems are the property of RM+D.

*     *     *

e. **Personal Use.** Personal use of the systems is authorized within reasonable limits as long as it does not interfere with or conflict with business. Employees are responsible for exercising good judgment regarding the reasonableness of personal use. In case of doubt, employees should consult their supervisor or management. RM+D reserves the right to terminate, in its discretion, any personal use of the systems at any time.

*     *     *

h. **Accessing Information.** Employees may access only that information that they are authorized to access. They may not access information that contains other co-workers' systems or other drives that they are not authorized to access or other files within the drives.

i. **Confidential Information.** Employees are prohibited from retrieving, copying and/or forwarding any confidential or trade secret or proprietary information unless authorized by management.

*     *     *

## 5.12    Confidentiality

All employees have the obligation to keep all business matters confidential. Divulging confidential information, including but not limited to the Monday Morning update, client lists, internal or client emails, etc. is cause for immediate termination with loss of all accrued benefits. Employees' names, addresses or telephone numbers are not to be released without prior approval by said employee. The terms of each employee's signed and dated Employee Confidentiality

4

Agreement is [sic] legal and binding during employment and upon termination. Each employee's signed and dated agreement is contained in his/her personnel file.

### 5.13 Resignation/Termination

*      *      *

Upon termination or resignation, the employee must return all keys, credit cards, business cards, employee manuals, electronic files and work equipment that is the property of Reagan Marketing + Design. The employee must pay all money owed to Reagan Marketing + Design (money owed will be deducted from last paycheck).

*      *      *

### 5.15 Serious Offenses

RM+D's standards of conduct are established for the guidance of all employees. The standards are only a partial list of unacceptable behaviors and conduct, as a complete list of all possible violations would be impossible to write. There are certain major offenses, which could require an immediate penalty of reprimand, suspension or discharge. The following are considered major violations:

*      *      *

d. Engaging in any outside employment while on a leave of absence or moonlighting in violation of RM+D's policy.

e. Violating RM+D's confidentiality policy.

*      *      *

i. Using, removing, stealing, or intentionally damaging the property of RM+D, co-workers or clients, including any articles found on the premises.

*      *      *

(**Exhibit 1**, Employee Handbook).

14.    On November 29, 2022, Bradley signed and returned a "Receipt for Employee Handbook", which states in pertinent part as follows:

> I have received a copy of the Reagan Marketing + Design ("RM+D") Employee Handbook and will read through it carefully. . . . I agree to abide by any and all policies, rules and regulations of RM+D, whether contained in this Employee Handbook or not. Further, I understand that the policies, rules and regulations of RM+D may be changed, modified or supplemented at any time and that such changes, modifications or supplements may be made orally or in writing. I agree to

5

{03387591 1 }

abide by such changes, modifications or supplements. . . . I further acknowledge that it is my responsibility to read this handbook and to ask questions about anything I do not understand.

(**Exhibit 2**, Receipt for Employee Handbook).

15.     On November 29, 2022, RM+D and Bradley entered into a "Receipt, At Will and

Confidentiality Agreement", which states in pertinent part as follows:

I, Denice Bradley, acknowledge that I have received and reviewed Reagan Marketing + Design's Employee Reference and Policy Manual.

\*       \*       \*

I agree to abide by any and all policies, rules and regulations of Reagan Marketing + Design whether contained in this manual or not. Further, I understand that the policies, rules and regulations of Reagan Marketing + Design may be changed, modified or supplemented at any time and that such changes, modifications or supplements may be made orally or in writing. I agree to abide by any such changes, modifications and supplements. . . . I further acknowledge that it is my responsibility to read this manual and to ask questions about anything that I do not understand.

\*       \*       \*

I fully understand the contents and agree to comply with all applicable policies, rules and regulations of Reagan Marketing + Design, whether contained is [sic] this manual or not.

(**Exhibit 3**, Receipt, At Will and Confidentiality Agreement).

16.     On November 29, 2022, RM+D and Bradley entered into a "Conflict of Interest

Agreement", which states in pertinent part as follows:

**Policy Statement**

It is RM+D policy that employees and others acting on RM+D's behalf must be free from conflicts of interest that could adversely influence their judgment, objectivity or loyalty to the company in conducting RM+D business activities and assignments. RM+D recognizes that employees may take part in legitimate financial, business, charitable and other activities outside their RM+D jobs, but any potential conflict of interest raised by those activities must be disclosed promptly to management.

**What it means**

6

- Request management approval of outside activities, financial interests or relationships that may pose a real or potential conflict of interest. Remember that management approval is subject to ongoing review, so you need to periodically update your management regarding your involvement.

\*    \*    \*

- Avoid actions or relationships that might conflict or appear to conflict with your job responsibilities or the interests of RM+D.

\*    \*    \*

- Obtain necessary approvals before accepting any position as an officer or director of an outside business concern.

\*    \*    \*

**What to avoid**

- Working with a business outside your RM+D responsibilities that is in competition with any RM+D business.

\*    \*    \*

- Having a direct or indirect financial interest in or a financial relationship with a RM+D competitor, supplier or customer (except for insignificant stock interests in publicly held companies).

\*    \*    \*

- Having a second job where your other employer is a direct or indirect competitor, distributor, supplier or customer of RM+D.

- Having a second job or consulting relationship that affects your ability to satisfactorily perform your RM+D assignments.

- Using nonpublic RM+D information for your personal gain or advantage, or for the gain or advantage of another, including the purchase or sale of securities in a business RM+D has a relationship with or is terminating business relations with.

\*    \*    \*

**(Exhibit 4**, Conflict of Interest Agreement).

{03387591 1 }

17.     On or about June 9, 2023, following a 6-month performance review, RM+D reassigned Bradley to the position of Graphic Designer and subsequently adjusted her compensation package accordingly.

18.     At about 1:30 p.m. on September 29, 2023, RM+D management met with Bradley to notify her that her employment at RM+D was terminated.

19.     During the September 29, 2023 termination meeting, RM+D and Bradley entered into a letter agreement concerning Bradley's departure. (**Exhibit 5,** Letter Agreement).

20.     The letter agreement sets forth Bradley's post-employment obligations to RM+D as follows:

> First, you may not use or disclose any of RM+D's confidential business information for the benefit of your company, your clients, or anyone else. This applies not only to information about RM+D, but also to information about our clients, employees, projects, contracts, and the like.

> Second, any work or materials that RM+D prepared for a client, including materials that you prepared during your employment with RM+D, are the property of RM+D or its client. Therefore, you may not use any of RM+D's work product or materials to promote your employer or to perform work for your clients.

> Third, please be sure that you have returned all property, work materials, and business information of RM+D that has been in your possession. This includes all equipment (e.g. MacBook Pro laptop and any peripheral devices and electronic storage devices, LG monitor and the power cord and lightning cord), documents, work product, materials, and data, in paper or electronic form, that you obtained (or that contain information you obtained) in the course of your employment with RM+D. This also includes all information about clients or prospective clients, and any other items of company property. Upon request you will agree to provide any user ID and passwords to access the laptop and any electronic storage devices. You are not to destroy, delete, transfer or duplicate any data on the devices or anything in paper form. You may not keep any copy or record of any RM+D materials or information, in any form. Written permission must be obtained by Mary Reagan Shapton to use any RM+D samples to promote your work.

> If any of your personal devices contain any documents, work materials or business information related to RM+D, please clear this information from those devices immediately. This includes contact information, documents that were created and/or revised, photos, etc. If your personal devices contain any records of work that you have performed for RM+D that is not duplicated on RM+D's system you

8

must copy and return to RM+D so that it can be transferred to RM+D's computer system, then permanently delete it from your device(s).

*     *     *

As confirmation that you have returned all RM+D property, materials and information, please sign the enclosed copy of this letter and return it to me. If there is any RM+D material that you have not returned, please contact me immediately to make arrangements to return it.

*Id.*

21.      Bradley carefully reviewed the letter agreement during the September 29, 2023

termination meeting before signing the following certification at the end of the agreement:

Certification: I have received a copy of this letter agreement. I certify that I agree to comply with the terms of this letter agreement and that I have returned to Reagan Marketing + Design, LLC all items of RM+D property, including all equipment, keys, security cards, all work product, documents, records, files, data and information of any kind in any form, including all duplicates and reproductions in any form. I have permanently and irretrievably deleted all RM+D confidential information and work product from any computer or electronic storage device to which I have access other than the RM+D devices that I have returned to RM+D.

*Id.*

22.      During the September 29, 2023 termination meeting, Bradley returned the laptop

that RM+D had provided to her for RM+D work use.

23.      A preliminary inspection of the returned laptop revealed that, on September 29,

2023, shortly before she was notified of her termination, Bradley uploaded confidential and

proprietary RM+D client and project files to her personal Google drive.

24.      The RM+D files that Bradley uploaded to her personal Google drive contain

information that clients provided to RM+D pursuant to confidentiality and non-disclosure

agreements.

25.      On October 2, 2023, RM+D was able to gain control of the Google drive and deny

access to Bradley.

{03387591 1 }

26.     Later on October 2, 2023, Bradley requested that RM+D provide her with certain files from the Google drive relating to her "freelance" clients.

27.     Prior to receiving Bradley's October 2, 2023 request, RM+D was not aware that Bradley had been doing any "freelance" work while employed by RM+D.

28.     While processing Bradley's request for "freelance" files, RM+D discovered that Bradley had been performing unauthorized "freelance" work during RM+D's regular work hours and that she had been using RM+D's email, equipment, and software to perform the work.

29.     On October 5, 2023, Bradley requested that RM+D provide her with files from the returned laptop, including personal files and various RM+D project files that she intended to take samples from for her personal design portfolio.

30.     On October 7, 2023, RM+D discovered that Bradley had downloaded various Adobe Stock images that are licensed to RM+D (not to Bradley) to a "resume" folder that she had created on the returned laptop.

31.     On October 12, 2023, RM+D sent Bradley a letter responding to her recent requests and RM+D's recent discoveries, which states in pertinent part as follows:

> Your employment with Reagan Marketing + Design was terminated, effective immediately, on September 29, 2023. In our meeting, we discussed the details of this decision and offered an opportunity for you to ask questions or discuss further. At that time, you stated that we've had many discussions about this over the last few months and you had nothing further to say. Jen then sat down with you to walk through the details of your exit letter and collect your things. Jen notes that you were very thorough in your review of the letter and your understanding of obligations prior to signing the document.
>
> We have performed an audit of your RM+D issued laptop and discovered numerous violations to the exit agreement and we are exploring our legal options for these violations:
>
> •     Sept 29 – prior to our scheduled 1:30pm meeting, you began uploading RM+D client project files to your personal Google drive. These files are property of RM+D, many of which are confidential and bound to the Professional Service Agreements in place with our clients.

{03387591 1 }

- Oct 2 – you made us aware that you had freelance files within these folders and requested access to those files as your client was expecting work from you that day. Out of courtesy you were provided the freelance files that you were in the process of uploading to your Google drive. Upon further review, it is clear that you were performing your freelance work during the work day while on company time, using RM+D owned and issued equipment, software and email, which means those files are property of RM+D. I followed up with a letter informing you that your actions are a major violation of the agreement.

- Oct 7 – amongst other files found on your laptop, it was discovered that you have downloaded Adobe Stock images and saved these in your resume folder. If these images are still in your possession, they cannot be utilized for any of your portfolio work. These images are licensed to RM+D and we are bound by the agreements in place with Adobe.

On October 5, you requested your personal files and various project files for your portfolio and confirmed your RM+D monitor is ready to be picked up from your home. Jen will reach out the week of October 16 to schedule pick up of the RM+D monitor and laptop bag, and then will follow up with a link to download the personal files (tax documents, house planning documents) found on your RM+D laptop.

We are obligated and must follow our client agreements, and due to your continuing violations of the exit agreement, we will not provide any further files and materials for your portfolio.

Your salary will be paid out in accordance with your exit agreement, but you will not receive a severance due to your numerous violations.

Moving forward, it is best that we move beyond this situation and focus on our respective priorities. Again, I trust that you understand your obligations as set forth in any and all agreements you signed while employed at Reagan Marketing + Design.

32.     RM+D has been doing business as Reagan Marketing and Design, LLC since at least as early as 1998, has held a Certificate of Assumed Name for "Reagan Marketing and Design" since that time, and has continuously done business within Michigan and in interstate commerce under the marks REAGAN MARKETING AND DESIGN, REAGAN MARKETING + DESIGN, and REAGAN MARKETING since that time. RM+D's predecessor-in-interest did business as REAGAN MARKETING from 1992 until RM+D was formed in 1998.

11

{03387591 1 }

33.     RM+D has registered the domain name reaganmarketing.com, and RM+D's website is accessible at that URL.

34.     On October 12, 2023, Bradley purchased the following domain names that infringe on RM+D's unregistered trademarks REAGAN MARKETING and REAGAN MARKETING AND     DESIGN:     Reagan-marketing.com;     reagan.marketing;     reaganmarketing.co; reaganmarketing.info; and reaganmarketing.us.

35.     Upon information and belief, Bradley purchased the infringing domain names with the intention of diverting web traffic going to the domains to her website, denicebradley.com, where she displays her graphic design portfolio.

36.     On October 16, 2023, Bradley reached out to an RM+D employee via text message and the following text message exchange ensued:

> [Bradley] Hey Lady! Do you know if we have a confidentiality agreement with Econ Club? Not sure if I could use their annual dinner in my online portfolio.
>
> [RM+D employee] Yes we had a pretty extensive one – sorry!
>
> [Bradley] No worries! This might be outside your wheel house, but what if I create a sample logo/client and change the speaker so it's not connected to them?
>
> [RM+D employee] Oh geeze I have no clue. I k is we had one for the client and one for the speaker that were both extensive. I'm not sure how that works
>
> [Bradley] Right?! Me either! What about the MSU golf Outing? I was thinking making it "Michigan Valley" and removing the sparty helmet
>
> [RM+D employee] That one is a Mary/Tara question, I'm sure we have a confidentiality agreement bc they are medical + MSU.
>
> [Bradley] I'll have to wing it. Won't look like theirs at all, just inspo for a fake project. Different fonts, colors, images… no one will be able to tell at all. Mary and I aren't really on speaking terms…

37.     On October 17, 2023, after being notified about the above-quoted text exchange, RM+D sent the following email to Bradley:

Denice,

Yesterday I was made aware that you reached out to a team member inquiring if we have confidentiality agreements in place with two clients.

Noted in the attached follow-up it is stated that you will not be provided any client files. You are not to connect with and request files through any RM+D team member or to discuss RM+D's business. All team members sign a confidentiality agreement when they join RM+D. We also have confidentiality and non-disclosure agreements in place with our clients. It is also important to note that recreating any of these projects representing like work created for our clients by you and/or others while at RM+D is a misrepresentation by you and would breach your existing agreements with RM+D.

Please confirm receipt of this email, which includes the communication sent last week, on October 12 (attached).

Mary Reagan Shapton

38.     Following the termination of her employment at RM+D, Bradley uploaded a number of graphic designs to the portfolio page of her website, denicebradley.com, which are minor modifications of designs owned by RM+D or its clients, some of which include RM+D client names and confidential information.

39.     Upon information and belief, Bradley downloaded RM+D confidential client files onto external hard drives in the months leading up to the termination of her employment, and then used confidential material from those files to create the derivative designs that she displayed on denicebradley.com.

40.     On November 1, 2023, and again on November 3, 2023, legal counsel for RM+D sent cease-and-desist and demand letters to Bradley, which included demands for return of all RM+D property and RM+D-client property.

41.     Bradley has acknowledged receipt of the cease-and-desist and demand letters, but has failed to comply with RM+D's instructions and demands.

42.     In response to RM+D's November 1, 2023 cease-and-desist and demand letter, it appears that Bradley masked her website, denicebradley.com, but, upon information and belief, she is continuing to display, or intends to continue displaying, her infringing derivative designs on the internet.

43.     At one point, Bradley also published the infringing derivative designs on a different website, denicekinney.com, which also appears to have been masked.

## COUNT I – BREACH OF CONTRACTUAL DUTIES TO RETURN PROPERTY AND MAINTAIN CONFIDENTIALITY

44.     Plaintiff incorporates the prior and ensuing allegations as if restated in their entirety herein.

45.     The "Employee Handbook", the "Receipt, At Will and Confidentiality Agreement", and the September 29, 2023 letter agreement are each contracts created by the mutual assent of RM+D and Bradley and supported by adequate consideration.

46.     The Employee Handbook imposes a contractual duty on Bradley to return all property of RM+D following her termination, including, but not limited to, electronic files and print materials belonging to RM+D.

47.     The September 29, 2023 letter agreement imposes a contractual duty on Bradley to return all RM+D property, work materials, and business information, including, but not limited to, all information about RM+D clients and prospective clients.

48.     The September 29, 2023 letter agreement contractually prohibits Bradley from retaining RM+D property, work materials, and business information, including electronic files and print materials, or copies of the same.

49.     Bradley has breached and is continuing to breach her contractual duties to RM+D to return RM+D property, work materials, and business information.

14

50.     Bradley has breached and is continuing to breach her contractual duties to RM+D by retaining RM+D property, work materials, and business information, including electronic files and print materials belonging to RM+D and its clients.

51.     The Employee Handbook and the Receipt, At Will and Confidentiality Agreement impose a post-employment contractual obligation on Bradley to maintain the confidentiality of all RM+D business and client information.

52.     The September 29, 2023 letter agreement contractually prohibits Bradley from using or disclosing RM+D's confidential business information, including information relating to RM+D's clients and projects.

53.     Bradley has breached and could still be breaching her contractual duties to maintain the confidentiality of RM+D business and client information by displaying confidential RM+D business and client information on her websites, and possibly elsewhere, and by falsely holding RM+D work product out as her own.

54.     The contractual breaches described herein have caused harm and damages to Plaintiff.

55.     Unless the Court grants the temporary and permanent injunctive relief requested herein (requiring Bradley to return all RM+D property, work documents, and business information in her possession, prohibiting Bradley from retaining the same, and prohibiting Bradley from using and disclosing RM+D's client and project information), RM+D will suffer irreparable harm that has no adequate remedy at law, including, but not limited to, loss of client goodwill, damage to its reputation and standing in the business community, infringement of its intellectual property rights, loss of business and competitive advantage, and the undermining and erosion of its policies and procedures.

56.     Temporary and permanent injunctive relief is warranted because (a) RM+D has a strong likelihood of prevailing on the merits of its claims; (b) RM+D will be irreparably harmed if such relief is not granted; (c) such relief would not cause substantial harm to Bradley or others; and (d) the public has an interest in Courts protecting legitimate contractual and property rights.

WHEREFORE, Plaintiff requests that the Court (1) grant the temporary and permanent injunctive relief described in the omnibus prayer for relief, *infra*; (2) enter a money judgment in favor of RM+D and against Bradley for compensatory and exemplary damages, attorney fees, costs, and pre- and post-judgment interest; and (3) grant such other legal and/or equitable relief in favor of RM+D and against Bradley as the Court deems appropriate.

### COUNT II – CONVERSION AND STATUTORY CONVERSION

57.     Plaintiff incorporates the prior and ensuing allegations as if restated in their entirety herein.

58.     During her employment at RM+D, Bradley took RM+D personal property and work files from RM+D and exercised dominion over the same.

59.     Bradley took the RM+D property and work files and exercised dominion over the same without RM+D's knowledge, authorization, or approval, and in violation of contractual prohibitions.

60.     Bradley has refused to return the RM+D property and work files that she has taken and continues to exercise dominion over the same, despite having a contractual obligation to return all RM+D property and work files upon termination of her employment.

61.     The taking and retention of the RM+D property and work files by Bradley are distinct acts of dominion over RM+D's personal property and are in denial of, and inconsistent with, RM+D's rights in the property.

{03387591 1 }

62.     Bradley's acts of conversion have caused damage to RM+D.

63.     Bradley has converted RM+D's property to her own use, including by uploading RM+D designs with minor modifications to the portfolio page of her website, denicebradley.com, and such actions have caused damage to RM+D.

64.     Bradley has stolen or embezzled RM+D's property, and RM+D has been damaged as a result of the same.

65.     Bradley has received, possessed, and/or concealed property of RM+D that was stolen, embezzled, and/or converted, with knowledge that the property was stolen, embezzled, and/or converted, and RM+D has been damaged as a result of the same.

66.     Bradley is liable to RM+D for treble damages, reasonable attorney fees, and costs under MCL 600.2919a.

WHEREFORE, Plaintiff requests that the Court (1) enter a money judgment in favor of RM+D and against Bradley for compensatory damages, exemplary damages, treble damages, reasonable attorney fees, costs, and pre- and post-judgment interest; and (2) grant such other legal and/or equitable relief in favor of RM+D and against Bradley as the Court deems appropriate.

### COUNT III - BREACH OF CONTRACTUAL AND FIDUCIARY DUTIES TO BE A FAITHFUL AGENT

67.     Plaintiff incorporates the prior and ensuing allegations as if restated in their entirety herein.

68.     The Employee Handbook and the Conflict of Interest Agreement imposed contractual obligations on Bradley during the term of her employment not to engage in unapproved freelance marketing and design work, not to use RM+D property for outside business matters, not to engage in activities that interfered with or prevented her from satisfying her employment

{03387591 1 }

obligations, and not to take RM+D client and project files outside the ordinary course of what was needed for her to satisfy her employment obligations to RM+D.

69.    As an employee and agent of RM+D, Bradley owed fiduciary duties of honesty, loyalty, prudence and care to RM+D, which required her to act as a faithful agent of RM+D and in the best interests of RM+D in regard to the performance of her employment duties.

70.    Bradley breached the contractual obligations and fiduciary duties described herein, and acted as a faithless agent, by engaging in unapproved freelance work during RM+D work hours, and by using RM+D equipment, software, and other property to perform such work.

71.    Bradley breached her contractual and fiduciary obligations described herein by uploading confidential RM+D files to external storage devices or areas with the intent of using the files for purposes unrelated to her employment with RM+D.

72.    The breaches described herein have directly and proximately caused damage to RM+D.

73.    As a faithless agent, Bradley is required to disgorge some or all of the compensation that RM+D paid to her during the term of her employment.

WHEREFORE, Plaintiff requests that the Court (1) enter a money judgment in RM+D's favor and against Bradley for compensatory and exemplary damages, attorney fees, costs, and pre- and post-judgment interest; and (2) order such other legal and/or equitable relief in favor of RM+D and against Bradley as the Court deems appropriate.

## COUNT IV – TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND CYBERSQUATTING

74.    Plaintiff incorporates the prior and ensuing allegations as if restated in their entirety herein.

18

75. There is a common-law cause of action for trademark infringement under Michigan law, and there is a federal cause of action for trademark infringement involving unregistered marks under Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a).

76. There is also a cause of action for cybersquatting under Section 43(d) of the Lanham Act, codified at 15 U.S.C. § 1125(d).

77. RM+D owns the unregistered marks REAGAN MARKETING and REAGAN MARKETING AND DESIGN.

78. RM+D's predecessor-in-interest made the first use of the unregistered mark REAGAN MARKETING in 1992, and used the mark continuously thereafter until RM+D was formed in 1998.

79. RM+D made the first use of the unregistered mark REAGAN MARKETING AND DESIGN in 1998.

80. RM+D has continuously used the marks REAGAN MARKETING and REAGAN MARKETING AND DESIGN in commerce to identify its goods and service since 1998.

81. The unregistered REAGAN MARKETING and REAGAN MARKETING AND DESIGN marks are sufficiently distinctive (through inherent distinctiveness and/or secondary meaning) to distinguish RM+D's goods and services from those of others.

82. Bradley is using or intends to use, in interstate commerce, trademarks that are identical to, or that are confusingly similar adaptations of, the REAGAN MARKETING and REAGAN MARKETING AND DESIGN marks owned by RM+D.

83. Bradley's use or imminent intended use of the REAGAN MARKETING and REAGAN MARKETING AND DESIGN marks owned by RM+D, and adaptations thereof, is without RM+D's authorization.

{03387591 1 }

84.     RM+D is not connected with Bradley or Bradley's goods or services.

85.     Bradley's ownership and use of domain names incorporating the words "Reagan Marketing", especially if used to divert web-traffic to the denicebradley.com site, is likely to falsely suggest a connection between RM+D and Bradley, and is likely to confuse and mislead consumers into believing that RM+D approves or sponsors Bradley's goods and services, or that RM+D is the source of Bradley's goods and services.

86.     Bradley's use of domain names incorporating the words "Reagan Marketing" is intended to diminish RM+D's goodwill and to create confusion regarding the source, approval, and sponsorship of Bradley's goods and services.

87.     Bradley's use of domain names incorporating the words "Reagan Marketing" has created, or is likely to create, actual confusion in the minds of consumers regarding the source, approval, and sponsorship of Bradley's goods and services.

88.     Bradley's continued use of RM+D's trademarks will cause loss, damage, and injury to RM+D and to the purchasing public.

89.     Bradley is therefore liable to RM+D for unfair competition under Michigan common law and under 15 U.S.C. § 1125(a)(1)(A) and 15 U.S.C. § 1125(d)(1)A).

90.     Bradley's unfair competition is willful and malicious.

91.     Bradley's registration of the infringing domain names referenced *supra*, which are confusingly similar to RM+D's trademarks, was in bad faith and for the intent of profiting off RM+D's trademarks.

92.     Unless Bradley is temporarily and permanently enjoined by the Court from infringing on RM+D's unregistered trademarks, RM+D will suffer irreparable harm for which there is no adequate remedy at law, including, but not limited to, lost business, the loss and

impairment of its goodwill, and damage to its reputation among clients and in the wider business community.

93.     Temporary and permanent injunctive relief is warranted because (a) RM+D has a strong likelihood of prevailing on the merits of its claims; (b) RM+D will be irreparably harmed if such relief is not granted; (c) such relief would not cause substantial harm to Bradley or others; and (d) the public has an interest in protecting consumers from confusion as to the source, approval, or sponsorship of goods and services and in Courts protecting intellectual property rights.

WHEREFORE, Plaintiff requests that the Court (1) grant the temporary and permanent injunctive relief described in the omnibus prayer for relief, *infra*; (2) enter a money judgment in favor of RM+D and against Bradley for compensatory and exemplary damages, attorney fees, costs, and pre- and post-judgment interest; and (3) grant such other legal and/or equitable relief in favor of RM+D and against Bradley as the Court deems appropriate.

## PRAYER FOR RELIEF

RM+D respectfully requests that the Court grant the following relief in favor of RM+D and against Bradley and all those who are in active concert or participation with Bradley:

A. An immediate temporary injunction and a permanent injunction against Bradley using or disclosing any RM+D property and any RM+D-client property, as well as any design works derived from such property.

B. An immediate mandatory injunction requiring Bradley to return all tangible RM+D property and RM+D-client property in her possession, custody, or control to RM+D within 2 business days.

C. An immediate mandatory injunction requiring that Bradley, within 48 hours, provide RM+D with all of her electronic devices that contain, or ever contained, folders, files,

documents, data, or information of any kind relating to RM+D and/or RM+D clients, without first deleting or transferring any information or data from the devices, so that RM+D may have the devices forensically imaged and purged of such folders, files, documents, data, and information at Bradley's cost.

D. An immediate mandatory injunction requiring that Bradley, within 48 hours, provide RM+D with access to all cloud and remote storage accounts and areas accessible to Bradley that contain, or ever contained, folders, files, documents, data, or information of any kind relating to RM+D and/or RM+D clients, without first deleting or transferring any information or data from the accounts or areas, so that RM+D may have the accounts and areas forensically examined and purged of such folders, files, documents, data, and information at Bradley's cost.

E. An immediate temporary injunction and a permanent injunction against Bradley making any use in commerce of RM+D's unregistered trademarks or any marks confusingly similar to them.

F. An immediate temporary injunction and a permanent injunction against Bradley using the domain names that infringe on RM+D's trademarks, and requiring Bradley to transfer or cancel the infringing domain names she has purchased, at RM+D's election.

G. An immediate temporary injunction requiring Bradley to preserve all of her communications and records pending the close of discovery.

H. An immediate temporary injunction requiring Bradley to swear out an affidavit confirming that she has satisfied the other requirements set forth in the Court's order granting temporary injunctive relief.

{03387591 1 }

I.   A money judgment in favor of RM+D and against Bradley for compensatory and exemplary damages, treble damages, attorney fees, costs, and pre- and post-judgment interest.

J.   Such other legal and/or equitable relief in favor of RM+D and against Bradley as the Court deems appropriate.

Respectfully submitted,

MIKA MEYERS PLC
Attorneys for Plaintiff

Dated: November 16, 2023                    By: /s/ Daniel J. Broxup
                                                 Daniel J. Broxup (P72868)
                                                 900 Monroe Avenue, NW
                                                 Grand Rapids, MI 49503
                                                 (616) 632-8000

{03387591 1 }